UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MICHAEL W. BACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:07cv207 |
| | ) |
| TRANS UNION LLC, et al., | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on a "Motion for Reconsideration and to Alter or Amend Judgment" filed by the defendant Trans Union, LLC ("Trans Union") on April 28, 2008. The plaintiff, Michael W. Back ("Back"), filed his response on May 9, 2008 to which Trans Union replied on May 22, 2008.

For the following reasons, the motion to reconsider will be denied.

Discussion

On April 14, 2008, this court entered an order granting Back's motion to dismiss and denying Trans Union's request for sanctions. Trans Union has now filed a motion to reconsider this order, ostensibly "for the sake of complete consistency with the evidentiary record and to avoid the possibility of misuse of the Order as precedent...." (Motion at 1).

Trans Union first states that "the Order does not evaluate as required each basis presented for sanctions." Trans Union states that in addition to relying on 28 U.S.C. § 1927, it also relies on the fee shifting provision of the FCRA (15 U.S.C. §§ 1681n(c) and 1681o(b)), the Indiana Frivolous Litigation Statute, IC § 34-52-1-1, and the inherent powers of the Court.

Trans Union fails to understand that this is simply not an appropriate case for sanctions.

Rather, this case is normal, every-day litigation. Although Trans Union is of the belief that Back filed an entirely frivolous lawsuit attempting to badger Trans Union into taking a valid debt off Back's credit report, the court does not agree with Trans Union's characterization of the evidence. As this court detailed in its earlier Order, Back had some basis for pursuing suit. The court realizes that Trans Union is of the opinion that Back could not have believed that he had a sound basis for bringing suit. Simply stated, the court disagrees with Trans Union.

Trans Union next takes issue with several of the court's factual findings. First, Trans Union objects to the court's statement that "there is no evidence that Plaintiff's credit report was in need of any deletions or 'scrubbing' because the tax lien is very small compared to Plaintiff's reported income." (Order at 3-4). Notably Trans Union does not directly dispute this statement (and cannot, because it is true). Rather, Trans Union refers to a status conference before Magistrate Judge Rodivich where Back reportedly states that the damages from the inaccurate credit report could reach "seven figures". According to Back, this figure was thrown out during the context of possible settlement negotiations. Even assuming this information is true, and that it could form the basis of a factual finding, it is irrelevant to the issue. The point the court was trying to make was that the tax lien at issue is very small (approximately $2220.00). While it is within Back's rights to seek to have any item removed from his credit report that he believes has been inaccurately reported, this small tax lien simply does not lead the court to the conclusion that Back was so desperate to get rid of it at all costs that he filed a frivolous lawsuit in an attempt to force Trans Union to "scrub" his credit report.

Next, Trans Union disagrees with this court's statement that "[i]t is clear that Back, who is an attorney, had at least some reason to believe that he had a basis for requesting that Trans

2

Union investigate the reporting of a tax lien on his credit report." (Order at 3).  As this is the crux of Trans Union's request for sanctions, the court understands that Trans Union continues to disagree with this court's ruling.  The fact remains that Back did have a cancelled check showing that he paid the IDR $1923.00 on October 15, 2001, which Back believed satisfied his tax obligation for the 2000 tax year.  The parties apparently agree that Back had miscalculated the amount due on his 2000 Individual Income Tax Return by overstating the amount of his 2000 Estimated Tax Paid.  There is no evidence in the record that this was anything other than an inadvertent mistake on Back's part.  Back also had a letter from the IDR, stating that Back had no "outstanding liabilities, warrants or liens", prior to filing suit.

Trans Union relies on evidence, provided during the pendency of this lawsuit, that Back was notified by the IDR of an outstanding balance, and that he paid part of the amount due on November 30, 2001, and then later on June 13, 2002, after the tax lien was filed, submitted a check to the IDR which paid substantially all of the remaining balance.  This evidence was provided to Back's counsel on December 5, 2007.  Back filed his motion to dismiss on December 11, 2007.

The point here is that Back had evidence that his tax lien was possibly incorrectly reported on his credit report, and he had the right to ask for an investigation and require Trans Union to show support for the reporting of the lien. Rather than investigating, Trans Union merely supplied Back with the docket number related to the filing of the tax lien.  If Trans Union had supplied Back with the full IDR documentation _prior_ to the start of the lawsuit, it stands to reason that the lawsuit would have never been filed.  It is totally incongruous for Trans Union to fail to provide information and then, after being sued for not providing said information, seek

3

sanctions after the lawsuit was dismissed after the requested information was provided.

Trans Union also objects to the court's indication that Back did not serve as his own attorney in this case. Trans Union states that Back signed his state court complaint with his Indiana Attorney ID Number and his professional address. This court realizes that Back started the lawsuit himself. The point is that for nearly all the time the case was in this court, Back was represented by counsel and did not represent himself. In any event, whether Back represented himself or retained counsel is irrelevant.

Next, Trans Union objects to what it believes are "legal conclusions [that] create unwarranted precedent." Trans Union specifically objects to the court's statement that "[Back] was apparently able to convince the other two credit reporting agencies to delete the lien from their reports." The court fails to see how this is even a "legal conclusion" let alone a legal conclusion that would "create unwarranted precedent". It is undisputed that the other two credit reporting agencies deleted the lien from their reports.

Trans Union also objects to the court's statement that "Trans Union had the option of settling this rather minor tax lien issue with Back and reducing its litigation costs." Trans Union states that it could not settle the matter because it could not remove the tax lien and still comply with its FCRA duties under 15 U.S.C. § 1681e(b). However, the record showed that Trans Union stubbornly resisted providing the requested documentation for nearly a year, and that once the documentation was provided, Back sought to dismiss his suit. This court reiterates its belief that Trans Union could have reduced its litigation costs if it had sincerely desired to, without compromising its duties under the FCRA.

Next, Trans Union queries whether "there is any relevance to the finding that for a

4

business such as Trans Union, litigation costs are an expected cost of doing business." If Trans Union fails to see the relevance of this statement, it is free to consider it to be <u>dicta</u>.

Trans Union also objects to this court's statement that Back had a right to request an investigation of the tax lien.  Trans Union's logic is that the report was accurate, so Back had no right to request an investigation of the tax lien.  However, the purpose of an investigation is to prove that an item on the report is correct.  Trans Union has not (and cannot) dispute that a consumer has a right to question an entry on a credit report if the consumer believes it has been reported incorrectly.  While Trans Union continues to dispute that Back could have had a reasonable belief that the tax lien was inaccurately reported, it cites to no authority as to the degree of belief a person has to have before requesting an investigation.  For example, if a person has forgotten about an old debt and it shows up on a credit report, does he have sufficient belief to request an investigation?  If a person erroneously believes that it has paid off an account, and it shows up on his credit report as delinquent, do they have a right to request an investigation?  If a debtor's account is purchased by another entity and the name of the account changes such that it is unrecognizable by the debtor, is the debtor within his rights to ask the credit reporting agency to investigate the account?  It is clear to this court that the standard for requesting an investigation must be both low and in favor of the consumer, or else the consumer's "right to accuracy" is effectively abrogated.

Finally, Trans Union complains that this court had no basis for finding that the proceedings in this case had not been "unreasonably and vexatiously multiplied" and noting that both the state and federal dockets in this case were very short.  Trans Unions refers the court to its original response brief where it states that it has detailed Back's "obstructionist behavior."

5

Again, as this court held in the earlier order, it is clear that Back did not comply with initial discovery as fruitfully as Trans Union would have desired. However, there is no evidence that Trans Union sought any immediate relief from this alleged "obstructionist behavior" by filing a motion to compel or motion for sanctions specifically relating to the discovery dispute.  Rather, Trans Union sought an order (which was granted) directing the IDR to disclose information regarding the disputed tax lien.   The information received pursuant to that order resolved the case and Back filed a motion to dismiss. The court understands that Trans Union is upset at having to expend litigation resources to obtain information that it believes Back had in his own possession before filing suit (or at least had at some point in time).  However, the conduct in this case still does not rise to the level of sanctionable conduct.  Federal court cases are often very, very contentious for a very, very long time, especially with respect to discovery matters.  It is the nature of the business, and this court does not generally impose sanctions until the conduct is more egregious than that present in the case at bar.

       Accordingly, the motion to reconsider will be denied.

## Conclusion

       On the basis of the foregoing, the motion to reconsider is hereby DENIED.  The Clerk of the Court is directed to enter Judgment.

Entered: June 13, 2008.

       s/ William C.  Lee
       William C. Lee, Judge
       United States District Court